# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**KERRICK WATSON**                                                                         **PLAINTIFF**

**V.**                     **CAUSE NO. 3:16-cv-00987-CWR-FKB**

**ALLSTATE PROPERTY AND**                                **DEFENDANT**
**CASUALTY INSURANCE COMPANY**

## ORDER

The Court considers three items in the above-styled case. Plaintiff Kerrick Watson has filed a Motion to Exclude Certain Opinion Testimony of Joseph Hines. Defendant Allstate Property and Casualty Insurance Company has filed a Motion to Exclude the Opinions of Annette Herrin and a Motion for Summary Judgment, or in the alternative, a Motion for Partial Summary Judgment. The matters are fully briefed and ready for adjudication.

**I.**        **Background**

On December 28, 2015, a fire destroyed Watson's house, where he lived with his fiancé Zanetta Bowman and her daughter G.B. At the time, Watson had a homeowners insurance policy with Allstate. Watson immediately filed an insurance claim for the contents of the house.

The following day, Jennifer Morales, Allstate's contents adjuster, inspected Watson's home. Watson told her that everything in his house was new and purchased within the last two to three years. Watson requested the full policy limit of $107,681 for his contents claim.

On April 22, 2016, Watson and Bowman submitted to an examination under oath (EUO). Watson testified that in addition to working as a Mississippi State Trooper, he worked part-time as a commercial truck driver for Chambliss Automobile Agency, a truck driver for Falco Line Company, and a courtesy officer for Kings Apartment Complex. Watson also stated that he alone owned all of the items listed in his claim.

Allstate hired Joseph Hines, a forensic accountant, to assess Watson's claim. Hines drafted an initial report on August 1, 2016. Hines found that based on Watson's bank records, child support payment history, and his employer's payroll records, Watson could not have incurred $107,681 of household expenses because doing so would have left him with a cash-flow deficit ("CFD") of $85,243.

In response, Watson hired Annette Herrin, also a forensic accountant. Herrin concluded that Allstate did not request the proper financial records to make an informed determination of the reasonableness of Watson's claim. Namely, Herrin stated that Allstate should have requested financial records from Bowman.

At the close of its investigation on September 14, 2016, Allstate denied Watson's claim because Watson "intentionally overstated the value of the personal property damaged by the fire" and "made additional misrepresentations during the investigation of the claim."

Watson filed suit in Warren County Circuit Court in November 2016, alleging 10 state law claims against Allstate. Allstate properly removed the case to this Court on December 28, 2016, pursuant to diversity jurisdiction. On Allstate's Motion, the Court dismissed Watson's claims for breach of fiduciary duty, and estoppel and detrimental reliance. *See Watson v. Allstate Prop. & Cas. Ins. Co.*, No. 3:16-CV-00987-CWR-FKB, 2017 WL 4158860, at *3 (S.D. Miss. Sept. 19, 2017). Watson's remaining claims include breach of contract; bad faith denial of insurance benefits; negligence; negligent, grossly negligent, and wanton failure to monitor and train agents and adjusters; intentional infliction of emotional distress; indemnity; as well as Watson's request for punitive damages.

Allstate has designated Hines as an expert. Hines produced two additional reports based on new documents that Allstate received through discovery, including the depositions of Watson

and Bowman who both testified that they shared household expenses equally. In his October 19, 2017 report, Hines found that Watson would have incurred a CFD of $29,340. In his December 19, 2017 report, he recalculated a CFD of $68,488.

## II. Legal Standards

### A. *Daubert*

The standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and the post-*Daubert* amendments to Federal Rule of Evidence 702 govern the admissibility of expert testimony.[1] The purpose of Rule 702 is to guide the district court's gatekeeping function, which ensures that the jury hears reliable and relevant expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

The *Daubert* Court outlined a non-exclusive list of factors that trial judges should consider when assessing the reliability of expert testimony. These factors include: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known error rate of the theory; and; (4) whether the theory is generally accepted in the scientific community. The party offering the testimony bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

---

[1] Federal Rule of Evidence 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

The *Daubert* analysis applies strictly to the expert's process of reaching his or her conclusions, not the merits of those conclusions. *See Guy*, 394 F.3d at 325. The merits of an expert's conclusions are subject to scrutiny at trial through the use of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. As a result, when district courts assess the admissibility of expert testimony, the "court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

**B. Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that support it. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.,* 783 F.3d 527, 536 (5th Cir. 2015). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

When considering a summary judgment motion, the court "must view all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

4

**III. Discussion**

    **A.    Plaintiff's Motion to Exclude the Testimony of Joseph Hines**

Watson seeks to exclude testimony from Hines' post-investigation reports of October and December 2017. Hines produced these reports based on new documents Allstate received in discovery.[2] In Watson's view, "it would be unhelpful to the jury for Allstate, in defending itself against a bad faith claim, to inject evidence that did not form the basis for its denial in any way." While Watson argues that Hines' opinions are unreliable, he mainly contends that the evidence collected in discovery is inadmissible and cannot be relied upon by Hines. Allstate asserts that evidence obtained during the discovery process is relevant to its defense. The Court agrees with Allstate.

Watson primarily relies on *United American Insurance Company v. Merrill*, 978 So. 2d 613, 628 (Miss. 2007). *Merrill* involved the denial of coverage under a life insurance policy because there was a material misrepresentation in the insured's application. The insured answered "no" to the application question of whether he had been treated for congestive heart failure in the past three years. United American said he had been treated for such a condition sometime in the last three years.

The trial court allowed discovery of the insured's medical records for the five years preceding the submission of his application. But at trial, the court excluded the insured's medical records outside the three-year period because UA did not rely on those records to deny the insured's claim. The Mississippi Supreme Court affirmed. The *Merrill* court held the trial court

---

[2] In his October 2017 report, Hines relied on various documents that were not reviewed prior to Allstate's denial, including Watson's deposition, Bowman's deposition, credit reports, and Watson's answers to Allstate's first set of interrogatories. In his December 2017 report, Hines analyzed additional documents related to Bowman's Regions bank account.

properly included evidence of the relevant time period for which the insured allegedly made the material misrepresentation.

The Court recognizes some similarities between *Merrill* and the instant case. Allstate argues and the Court agrees, though, that *Merrill* is distinguishable. First, the insurer in *Merrill* chose not to request additional medical records until the beneficiary of the policy filed suit. The insurer could have obtained the records prior to its denial of the claim but decided not to do so. That is not the case here. The records shows that Allstate requested all relevant financial records from Watson during its initial investigation. Watson complains that Allstate did not request financial records from Bowman, but Allstate had no right under the policy to seek records from her since Watson had removed her from the policy a month before the fire.[3] Allstate could subpoena Bowman's financial records only after Watson filed suit.

Second, the evidence that Watson seeks to exclude is relevant to Allstate's defense—that Watson intentionally made material misrepresentations in his contents claim. The records obtained by Allstate in discovery, including the depositions of Watson and Bowman as well as Bowman's financial records, are relevant to the scope of Watson's alleged misrepresentations. As discussed below, Allstate asserts that information contained in the additional documentation conflict with Watson's testimony in his EUO.

Third, Hines' conclusion—that Watson overstated his contents claim—remained consistent in all three of his reports. Hines' consideration of additional evidence only altered the

---

[3] The policy reads: "In the event of a loss to any property that may be covered by this policy, **you** must . . . d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies." The policy defines "you" as "the person named on the Policy Declarations as the insured and that person's resident spouse." Watson and Bowman are not married and he is the only named insured.

scope of Watson's financial misrepresentations, not his finding that Watson made misrepresentations.

For these reasons, Watson's motion to exclude is denied.

**B.      Defendant's Motion to Exclude the Testimony of Annette Herrin**

Allstate asserts that the Court should exclude Annette Herrin's testimony because her opinion does not comport with the reliability requirements of *Daubert*.

In her September 2017 report, Herrin concluded that Allstate should have requested additional records related to Watson's income and expenditures. She believed that Hines did not have sufficient information to determine that Watson's claim was unreasonable or inaccurate.

Specifically, Herrin disagreed with Hines' decision not to include Bowman's contributions to household expenses in his first report. In her deposition, Herrin further testified that all of Watson's credit card statements were not available and that Allstate should have obtained banking records of deposits and withdrawals from Watson's bank account. Although Allstate acquired Watson's bank statements which list only an amount for each transaction, Herrin suggested that Watson's bank may have "backup documentation that might . . . give more detail" for each transaction.

To that point, Allstate argues that "[t]here is no reasonable basis to suggest that there would be additional back up documentation for Mr. Watson." Allstate points out and Watson admits that he deals mostly in cash—Watson receives unreported income "under the wallet" and makes most of his purchases with cash.

That may be true, but the Court disagrees with Allstate that Herrin's opinion is so lacking in indicia of reliability as to be inadmissible expert testimony. Based on her area of practice and training, Herrin has significant experience in accounting and financial analysis. Herrin

reasonably concludes that Hines may not have considered all sources of income and records of household expenses in finding that Watson overstated his contents claim. The Court permits Herrin to testify at trial so that the parties may thoroughly air her opinions before the jury, who will be tasked with the responsibility of weighing the testimony between the experts. This motion to exclude is denied.

### C. Summary Judgment

Watson argues that Allstate breached the policy by denying coverage for damage to his personal property. In response, Allstate says that the denial was proper because Watson breached the policy's "concealment or fraud" clause, as he made several material misrepresentations during the claim process. The policy contained the following condition: "We do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance."

It is well-established that concealment clauses in insurance policies are reasonable and valid under Mississippi law. *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 245 (5th Cir. 1985). Mississippi courts enforce such clauses to ensure viable investigations. *Id*. at 246.

For an insurance company to deny coverage on the basis of a concealment clause, it must establish that statements by the insured were (1) false, (2) material, and (3) knowingly and willfully made. *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 214 (5th Cir. 1991). The Mississippi Supreme Court "takes a broad view of materiality" as to misrepresentations made during an insurance investigation. *Edmiston v. Schellenger*, 343 So. 2d 465, 466 (Miss. 1977). Anything that may "have a bearing on the insurance and the loss" is material. *S. Guaranty Ins. Co. v. Dean*, 172 So. 2d 553, 556 (Miss. 1965). More specifically, an insured's financial matters are material to a fire investigation. *Nationwide Mut. Fire Ins. Co. v. Dungan*, 634 F. Supp. 674,

683 (S.D. Miss. 1986). "The insured is required to give the best information obtainable." *S. Guaranty*, 172 So. 2d at 556.

Allstate asserts that Watson made material misrepresentations and gave inconsistent statements as to his financial condition. In support, Allstate points to inconsistent testimony in Watson's EUO and deposition. During the investigation, Watson provided Allstate with a contents list and testified at his EUO that he owned all of the listed items—nothing was owned by Bowman or her daughter G.B. Months later at his deposition, Watson testified that he and Bowman split household expenses.

Allstate has also presented evidence suggesting that Watson's testimony conflicted with information gathered from other sources. In his EUO, Watson testified that Chambliss paid him in cash approximately $25,000 to $40,000 annually—income which Watson admittedly failed to report on his tax returns. Thus, for the three years leading up to the fire, Chambliss paid him a total of $75,000 to $120,000. When Allstate contacted Chambliss to confirm these amounts, Chambliss answered that he paid Watson approximately $9,400 in 2013, $11,300 in 2014, and $8,200 in 2015, totaling $28,900. This was a significantly lower number than what Watson had claimed. But those amounts too were not backed by any documentary support.

With these inconsistencies, granting summary judgment in favor of Allstate would require the Court to make "impermissible credibility determinations." *GuideOne Mut. Ins. Co. v. Rock*, No. 1:06-CV-218-SA-JAD, 2009 WL 1854452, at *5 (N.D. Miss. 2009) (denying summary judgment as to whether Defendants made material misrepresentations during the claim process based on inconsistent testimony); *see also Carroll v. Metro Ins. & Annuity Co.*, 166 F.3d 802, 808 (5th Cir. 1999) (reversing a district court's grant of summary judgment where plaintiff sufficiently proved a genuine issue of material fact existed as to whether her misrepresentation

was material to the insurer's risk). A jury must be allowed to assess this evidence. Summary judgment should therefore be denied as to Watson's breach of contract claim.

**D.  Partial Summary Judgment**

Allstate alternatively asserts that it is entitled to partial summary judgment as to Watson's bad faith; negligence; negligent failure to monitor and train agents and adjusters; and indemnity claims; in addition to Watson's request for punitive damages.[4]

**1.  Bad Faith**

When faced with a claim, an insurer is required to perform a prompt and adequate investigation of the circumstances surrounding the claim. *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 534 (Miss. 2003). A plaintiff's burden in proving a claim for bad faith refusal goes beyond merely demonstrating that the investigation was negligent. *Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 531 (Miss. 1997). Rather, "[t]he level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." *Id*.

The question of whether the insurer had an arguable reason for denial is an issue of law for the court. *Id*. "An arguable basis is a reason sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim." *Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 342 (5th Cir. 2002) (citation omitted). An exclusion or defense may constitute an arguable basis even if it does not ultimately bar coverage. *Id*. at 341.

Watson argues that Allstate performed an inadequate investigation and denied his claim without an arguable reason. First, Watson asserts that "Allstate relied upon a false report."

---

[4] Watson fails to address his claim under § 83-13-5 of the Mississippi Code, the "valued policy statute." Consequently, it does not survive summary judgment. *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof.").

During the investigation, Allstate hired Chris Walker, an independent investigator, to canvass Watson's neighborhood and interview neighbors. Walker summarized his findings in a report, which suggested that some of the neighbors saw items being removed from Watson's house prior to the fire. When Watson's counsel deposed the neighbors and asked them about the report, some of the neighbors refuted portions of the report. Watson argues that these discrepancies amount to a material misrepresentation on part of Allstate.

In response, Allstate contends that this amounts to "nothing more than a he-said/she-said argument that provides no indication that the information was false when provided to Allstate and is irrelevant to the ultimate question of whether Allstate had an arguable basis for denial." The Court agrees. In denying his claim, Allstate did not rely on the disputed portions of Walker's report that Watson takes issue with. As discussed above, Allstate maintains that it denied Watson's claim because he made several material misrepresentations during the investigation.

Second, Watson complains that Wilbur Jordan, who worked in Allstate's special investigations unit, ordered the disposal of debris samples from Watson's home. Watson argues that Allstate should have retained the samples until the investigation was over. But Watson fails to explain why the debris samples were relevant to his claim, especially when it was not denied on the basis of arson.

Third, Watson asserts that Allstate failed to consider Bowman's financial contributions to household expenses when it denied his claim. Bowman's income is not referenced in Hines' initial report, which Allstate relied on in denying his claim. To that point, Allstate explains that Watson testified in his EUO that he alone owned all of the contents listed in his claim. Further, Allstate points out that it did not have access to Bowman's financial documents since she was not named on the policy. It was also Watson's duty to turn over financial documents showing all

sources of income. And even when Hines considered Bowman's contributions in his September and December 2017 reports, his conclusion remained the same—that Watson overstated his contents claim.

Fourth, Watson argues that Hines' September and December 2017 reports amount to "post-claim underwriting" by Allstate. Post-claim underwriting occurs when an insurer investigates a claim and determines that the insured, due to misrepresentations on the application, was not entitled to coverage actually issued. The Mississippi Supreme Court has suggested that this practice may be inappropriate under Mississippi law. *See Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d 183, 186 (Miss. 1994). This argument is unpersuasive. Allstate did not deny Watson's claim due to misrepresentations on his application.

The record shows that Allstate had an arguable basis for denial supported by credible evidence. Further, Watson has presented "no evidence of any actions or inactions on the part of [Allstate] that approach the level of conscious wrongdoing, dishonest purpose, willful wrong, malice, or reckless disregard of an insured's rights necessary to support a claim of bad faith." *GuideOne*, 2009 WL 1854452, at *8. While the parties dispute the nature of the misrepresentations allegedly made by Watson, that dispute—while relevant to issue of contractual coverage—does not preclude the granting of summary judgment on the issue of bad faith.[5] The Court therefore grants summary judgment as to Watson's bad faith claim.

**2. Negligence and Negligent, Grossly Negligent, and Wanton Failure to Train and Monitor Agents and Adjusters**

---

[5] Granting summary judgment on the bad faith claim does not necessarily preclude an extracontractual damages instruction. The Court will await the evidence at trial. Depending on how evidence shapes up at trial, the Court may give an extracontractual damages instruction. *See* JEFFREY JACKSON ET AL., ENCYCLOPEDIA OF MISSISSIPPI LAW § 25:28 (2d ed. 2016) (citing *Univ. of So. Miss. v. Williams*, 891 So. 2d 160, 172 (Miss. 2004)); *see also Rutter v. Conseco Life Ins. Co.*, No. 3:09-CV-680-DPJ-FKB, 2013 WL 75074, at *5-6 (S.D. Miss. Jan. 4, 2013) (citing same).

Watson argues that Allstate was negligent in failing to monitor and train its agents and adjusters. A claim of negligent training or supervision "is simply a negligence claim, requiring a finding of duty, breach, causation and damages." *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (Miss. 2005).

Watson argues that Allstate mishandled his insurance needs by not paying his valid claim, that Allstate failed to follow industry standards by flatly denying his claim, and that Allstate failed to follow industry standards in delaying the issuance of its decision. Watson makes these same arguments under his breach of contract claim. Therefore, these claims are dismissed.

### 3. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress under Mississippi law, a plaintiff must produce evidence of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. App. 2004) (citation omitted). Such a claim will not extend to "mere insults, indignities, threats, annoyances, petty oppression, and other trivialities." *Id*. "Meeting the requisite elements of a claim for intentional infliction of emotion distress is a tall order in Mississippi." *Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 776 (S.D. Miss. 2003) (quotation marks and citation omitted).

Watson states that he is "prepared to testify to the pain, anguish, and embarrassment brought on by Allstate's harassing approach to this case and the personal difficulties caused to his personal relationships including the fact that he remains without the means to rebuild his home and move on with his life." But proposed testimony is not evidence of outrageous conduct.

13

Other than this proposed testimony, Watson proffers no evidence in support of this claim. Accordingly, Allstate is entitled to summary judgment as to Watson's claim of intentional infliction of emotional distress.

### 4. Indemnity

Watson argues that the Allstate policy provides for him "to be indemnified for out of pocket expenses advanced to replace covered losses." There is nothing distinct about this claim not already encompassed by his breach of contract claim. As such, this claim is dismissed.

## IV. Conclusion

The parties' Motions to Exclude Expert Testimony are denied. Allstate's Motion for Summary Judgment is denied and its Motion for Partial Summary Judgment is granted in part and denied in part. In light of this ruling, parties may file any additional motions in limine by July 9, 2018.

**SO ORDERED**, this the 3rd day of July, 2018.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE